(913 P.2d 209)
No. 73,427

ELVA M. RAY, *Appellee,* v. PONCA/UNIVERSAL HOLDINGS, INC., d/b/a CLASSIC CABLE, *Appellant.*

Opinion filed December 1, 1995.

*David P. Troup,* of Weary, Davis, Henry, Struebing & Troup, of Junction City, for appellant.

*Ron Svaty,* of Svaty, Sherman & Hoffman, of Ellsworth, for appellee.

Before PIERRON, P.J., RULON and GREEN, JJ.

GREEN, J.: Ponca/Universal Holdings, Inc., d/b/a Classic Cable (Classic Cable) appeals from a civil judgment under the Kansas Consumer Protection Act (KCPA), K.S.A. 50-623, *et seq.* Elva M. Ray sued Classic Cable, contending that Classic Cable reneged on an earlier promise to allow her to pay a reduced rate for cable service. The jury determined that Classic Cable committed a deceptive act or practice and awarded actual damages of $59.57. On appeal, Classic Cable contends (1) that the court erred in failing to instruct the jury that the deceptive act must be shown by clear and convincing evidence, (2) that the jury's determination that Classic Cable committed a deceptive act is not supported by sub-

stantial competent evidence, and (3) that the trial court abused its discretion in awarding a civil penalty of $2,742.

We conclude that the trial court properly instructed the jury, that the jury's determination that Classic Cable committed a deceptive act is supported by substantial competent evidence, and that the trial court's civil penalty award is reasonable. As a result, we affirm the judgment of the trial court.

Ray testified that she routinely paid for her cable service a year in advance because she received a reduced rate. When Ray received notice that the rates were going up, she phoned a representative of Classic Cable to ask if she could still receive a discount if she prepaid her cable charge. She testified that because the representative told her that she could receive 1 year's service by paying $214.68, she sent a check to Classic Cable for that amount. The check included a notation that she was paying for a full year. In September, Classic Cable notified Ray that she owed $13.87. She was also charged for October and November. Ray then filed suit against Classic Cable under the KCPA. Instead of accepting the damage award of $59.57, Ray elected to accept a civil penalty. The trial court awarded a civil penalty of $2,742.

Classic Cable makes two arguments that the factual evidence was insufficient to sustain the jury's verdict. First, Classic Cable argues that the trial court should have instructed the jury that Ray had to present clear and convincing evidence of a deceptive practice to prevail. The jury was instructed as follows:

"Kansas law provides no supplier shall engage in any deceptive act or practice in connection with a consumer transaction. Deceptive acts and practices include, but are not limited to, the following, each of which is a violation [of] Kansas law, whether or not any consumer has in fact been misled:

1. Representations made knowingly or with reason to know that property or services have sponsorship, approval, accessories, characteristics, ingredients, uses, benefits or quantities that they do not have;

2. The willful use, in an oral or written representation, of exaggeration, falsehood, innuendo or ambiguity as to a material fact; and

3. The willful failure to state a material fact, or the willful concealment, suppression or omission of a material fact."

Ray's brief points out that the instructions followed, almost verbatim, the wording of K.S.A. 50-626.

Importantly, Classic Cable did not object to the jury instructions at trial. In holding that the failure to object to jury instructions precludes reversal on appeal unless the instruction was clearly erroneous, our Supreme Court stated:

"A party may not assign as error the giving or failure to give an instruction unless the party objects before the jury retires to consider its verdict. The objection must distinctly state the matter to which the party objects and the grounds for such objection unless the instruction is clearly erroneous. [Citation omitted.]" *Bright v. Cargill, Inc.*, 251 Kan. 387, 409, 837 P.2d 348 (1992).

Classic Cable argues that the failure to give the clear and convincing instruction was clearly erroneous. Classic Cable reasons that a deceptive practice is "substantially the same" as fraud, which requires that the underlying facts be proven by clear and convincing evidence. However, Classic Cable cites no case law in support of this contention. We also found no case law or commentary which would indicate that the legislature intended to require the same or similar quality of proof in both fraud and deceptive practices. Indeed, the statute and the comments following the statute imply the opposite. K.S.A. 50-623 states:

"This act shall be construed liberally to promote the following policies:
(a) To simplify, clarify and modernize the law governing consumer transactions;
(b) to protect consumers from suppliers who commit deceptive and unconscionable practices;
(c) to protect consumers from unbargained for warranty disclaimers; and
(d) to provide consumers with a three-day cancellation period for door-to-door sales."

Additionally, the KCPA specifically censures false or misleading representations regarding price reductions. Under K.S.A. 50-626(b)(7), deceptive acts and practices include

"making false or misleading representations, knowingly or with reason to know, of fact concerning the reason for, existence of or amounts of price reductions, or the price in comparison to prices of competitors or one's own price at a past or future time."

Finally, the liberal interpretation of the KCPA is further supported by a Washburn law review note entitled "A New Kansas Approach to an Old Fraud." 14 Washburn L.J. 623 (1975). The note analyzes the KCPA and concludes that the legislature did not

intend to require that consumers prove all the common-law elements of fraud.

"In determining the elements of proof required in a damage suit under the CPA proof of the 'deceptive trade practice' proscribed by the Act does not require proof of all the elements of a common law fraud. The word 'fraud' does not appear in the CPA; the Act does not mention any elements of common law such as scienter, reasonable reliance, material fact and resulting damage, except within a few of the listed per se violations. Further, the CPA's forerunners, Kansas misrepresentation case law and the BPA, did not require the plaintiff to prove all elements of common law fraud. Consumers cannot reasonably be expected to bear a heavier burden of proof under an Act intended by the legislature to further advance Kansas consumer interests, than that required by its predecessors." 14 Washburn L.J. at 635.

The legislature clearly intended to increase the protections afforded consumers by enacting the KCPA. Equating the burden or quality of proof required to establish a deceptive practice with the proof required to establish common-law fraud is contrary to that intent. If the legislature intended to include a clear and convincing standard, it could easily have done so. Because there is no support for the imposition of this higher standard, we will not read it into the statute.

Classic Cable's second evidentiary argument focuses on the quantity of evidence presented. Essentially, Classic Cable argues that the evidence was insufficient to support the jury's finding that it had committed a deceptive act. "Whether an act is a deceptive practice under K.S.A. 50-626 is a question of fact for the jury. [Citation omitted.] Our standard of review, therefore, is whether there is substantial competent evidence to support the jury's findings. [Citation omitted.]" *Farrell v. General Motors Corp.*, 249 Kan. 231, 243, 815 P.2d 538 (1991).

Ray's case is admittedly limited to her testimony regarding her prior relationship with the cable company, her conversation with the company's employee who answered her call, and her check, which was admitted into evidence, for one year of services. On appeal, Classic Cable argues that Ray failed to prove her case because the deceptive practice she alleges could be characterized as a mistake. It argues, therefore, that the trial court erred in denying its motion for a directed verdict. But Classic Cable offered no ev-

idence from which the jury might infer that a mistake or misunderstanding had occurred. Whether an act is a deceptive practice is a question of fact for the jury. Therefore, the trial court properly submitted the case to the jury and denied Classic Cable's motion for directed verdict.

Finally, we are not permitted to weigh the evidence or pass upon the credibility of witnesses. *Craig v. Hamilton*, 221 Kan. 311, 313, 559 P.2d 796 (1977). Therefore, viewing the evidence in the light most favorable to Ray, the jury had sufficient evidence to find that Classic Cable committed a deceptive practice.

Classic Cable's final argument is that the trial court abused its discretion in awarding a civil penalty of $2,742. Our courts have repeatedly described abuse of discretion in the following manner:

"Judicial discretion is abused if judicial action is arbitrary, fanciful, or unreasonable, which is another way of stating that discretion is abused only if no reasonable person would take the view adopted by the trial court. If reasonable persons could differ regarding the propriety of the action taken by the trial court, it cannot be said that the trial court abused its discretion. [Citation omitted.]" *State v. Warden*, 257 Kan. 94, 116, 891 P.2d 1074 (1995).

Classic Cable argues that the amount of the civil penalty is excessive. It maintains that the trial court failed to state on the record exactly how it arrived at the sum of $2,742. Classic Cable further argues that its conduct was not particularly egregious and that this was an isolated incident.

Both Ray and Classic Cable cite cases dealing with punitive damages in their arguments on this issue. While the civil penalty here is not technically a punitive damage award, the cases are instructive. The case law reveals that neither the court nor the legislature has established a fixed ratio between actual and punitive damages to determine whether a punitive damage award is excessive. See *Iola State Bank v. Bolan*, 235 Kan. 175, 193, 679 P.2d 720 (1984). Hence, the courts have refused to reverse a verdict simply because of the size of the award, unless the amount of the verdict, in light of the evidence, shocks the conscience of the appellate court. *Cantrell v. R. D. Werner Co.*, 226 Kan. 681, 686, 602 P.2d 1326 (1979). Classic Cable complains that the penalty is 46 times the actual damages. On the other hand, Ray points to *Sampson v. Hunt*, 233

Kan. 572, 588, 665 P.2d 743 (1983), in which our Supreme Court upheld an award of punitive damages 30 times greater than the actual damages.

Classic Cable states in its brief that the new yearly rate that it was charging its cable customers was $274.20. If you multiply this amount by 10, the total sum is $2,742. When the trial court could have awarded a civil penalty up to $5,000, we do not think the award of $2,742 is excessive. See K.S.A. 50-634(b) and K.S.A. 50-636(a).

Affirmed.