(201 P.3d 702)
No. 97,826

CHARLES W. CAMPBELL, *Appellant*, v. DIRK HUBBARD, *et al.*, *Appellees*.

Opinion filed April 25, 2008.

*Charles W. Campbell*, appellant pro se.

*Teresa L. Watson* and *J. Steven Pigg*, of Fisher, Patterson, Sayler & Smith, L.L.P., of Topeka, for appellees Dirk Hubbard, John Klamann, and Klamann & Hubbard, P.A.

*Lowell W. Finson*, appellee pro se.

*Roger W. Warren* and *Sean P. Edwards*, of Sanders, Conkright & Warren, L.L.P., of Overland Park, for appellee Courtney Hueser.

Before McANANY, P.J., ELLIOTT and LEBEN, JJ.

LEBEN, J.: All states have statutes of limitations, which mandate that lawsuits must be brought within a limited time period after a claim arises. These statutes of limitations ensure that court proceedings take place while evidence about the claim is still available and relatively fresh, and they also provide finality and predictability in legal affairs. Once the suit is filed, the case may proceed to trial without further worry about the statute of limitations.

But claims are often filed shortly before the statute of limitations expires, and sometimes such suits are dismissed for technical or procedural reasons. In some cases, the statute of limitations stops running while a suit is pending, but the limitations period begins to run again once the suit is no longer pending. Thus, if a suit is filed the day before the statute of limitations expires and then is dismissed and refiled a week after its dismissal, it would be time-barred because it would be outside the statute of limitations.

The Kansas Legislature, like most other state legislatures, has provided a solution for this situation. It's called the savings statute, which is found at K.S.A. 60-518. When the terms of the savings statute are met, it literally saves a suit that otherwise would be time-barred. The savings statute provides that "[i]f any action be commenced within due time" and be dismissed for a reason other than the merits of the dispute, "the plaintiff . . . may commence a new action within six (6) months after such failure" even though "the time limit[] for the same shall have expired." For the savings statute to apply, then, (1) the first suit must have been filed before the limitations period expired (thus "commenced within due time"), (2) the first suit must have been dismissed for reasons other than the merits of the claim, (3) the second suit must have been filed within 6 months of dismissal of the first suit, and (4) but for the

savings statute, the limitations period must have expired when the second suit was filed.

All the parties in our case agree that Charles Campbell filed his second suit against his former attorneys after the limitations period had expired. Even when reviewing the facts in the light most favorable to Campbell, the 2-year statute of limitations on his claims expired June 4, 2005; his second suit was filed June 8, 2006. Thus, if the first suit was not commenced within due time, the savings statute cannot rescue Campbell's suit. See *Handy v. Reed,* 32 Kan. App. 2d 247, 254, 81 P.3d 450 (2003), *rev. denied* 277 Kan. 923 (2004) (savings statute does not apply when first action not commenced within due time).

It would seem a simple matter to determine when the first lawsuit began: look at the date it was filed. But things get complicated a bit here because Campbell's first suit was filed in Arizona and his second suit was filed in Kansas. And it turns out that a statute defines when a suit is commenced, and Arizona and Kansas both provide different statutory definitions. The appeal now before us ultimately comes down to whether Arizona or Kansas law is applied to determine whether the Arizona lawsuit was "commenced within due time."

Before we get to that question, we must discuss the way in which the issue was raised because this determines how we must treat the underlying facts of the case. The defendants filed a motion to dismiss in the district court. On that motion, the parties presented several matters outside the pleadings, and those matters were considered by the district court. In this situation, we treat the motion as one for summary judgment; thus, all facts and inferences that may reasonably be drawn from the evidence must be resolved in favor of Campbell. *Underhill v. Thompson,* 37 Kan. App. 2d 870, 874, 158 P.3d 987, *rev. denied* 285 Kan. 1177 (2007); see K.S.A. 60-212(b).

The district court did not recognize that the motion should be treated as one for summary judgment, but it did view the facts "in the light most favorable to [Campbell,]" which was proper. Under this standard, the events listed below occurred on the dates shown:

| | |
|---|---|
| June 4, 2003: | The Kansas federal court entered its final judgment dismissing Campbell's employment-discrimination suit. The defendants had represented Campbell in that suit; Campbell became eligible to sue his attorneys for malpractice claims at least by this date. |
| April 29, 2005: | Campbell filed his legal-malpractice lawsuit in Arizona. |
| June 4, 2005: | The 2-year statute of limitations expired on Campbell's claim. |
| August 25, 2005: | Campbell served the defendants with the Arizona lawsuit. |
| January 11, 2006: | The Arizona federal court granted Campbell's motion to voluntarily dismiss one defendant, Lowell Finson. The Arizona court concluded that it lacked personal jurisdiction over defendants Dirk Hubbard, John Klamann, and Courtney Hueser, and it granted the motion to dismiss in their favor. The decision did not decide the merits of Campbell's claim. |
| June 8, 2006: | Campbell filed his legal-malpractice lawsuit in Kansas against the same defendants. |

The district court has correctly summarized the key facts when taking the record in the light most favorable to Campbell. Though the defendants suggest that they were not actually served with the Arizona lawsuit on August 25, 2005, evidence in the record supports Campbell's claim that they were served then. Thus, on the standard applicable to a motion for summary judgment, we must accept the evidence most favorable to Campbell.

If Kansas law applies to determine whether the action was commenced within due time, Campbell loses. With one exception, K.S.A. 60-203(a) provides that an action is commenced at the time of filing *only* if service of process is obtained within 90 days. Campbell obtained service outside that 90-day period. The one exception

is that a 30-day extension may be obtained, but it may be obtained only if you ask for the extension before the 90-day period expires. *Read v. Miller*, 247 Kan. 557, Syl. ¶ 2, 802 P.2d 528 (1990). Campbell did not ask the Arizona court for an extension under this Kansas procedural statute. Under Kansas procedural law, then, the case was not "commenced" until service occurred on August 25, 2005, which was after the statute of limitations had expired.

But Arizona law is different. Under Arizona's rules, an action "is commenced by filing a complaint with the court." 16 Ariz. Rev. Stat. Ann. Rules of Civil Procedure, Rule 3 (2001). That rule is essentially identical to Rule 3 of the Federal Rules of Civil Procedure. Although the case was filed in federal court in Arizona, the basis for jurisdiction in the federal court was the diversity of citizenship between the plaintiff, an Arizona resident, and the defendants, residents of other states. When a federal court hears a case based on the diversity of the citizenship of the parties, it must apply the law of the state in which that federal court is located (called the forum state's law) in determining the date of a suit's commencement. 4 Wright & Miller, Federal Practice and Procedure § 1057 (3d ed. 2002). Thus, while the suit was pending in the Arizona federal court, that court would have applied the Arizona state rule that the suit was commenced simply by filing it.

The district court in our case concluded that Kansas law applied to determine whether the Arizona lawsuit was commenced within due time. The district court noted that the "claims asserted were state law claims," presumably governed by Kansas law, and concluded that "the determination of the date of the 'commencement' of the action is dependent upon Kansas law." While the substantive issues on Campbell's claims may indeed be determined by Kansas law, we cannot agree that the procedural issue of when a lawsuit is commenced in Arizona is governed by Kansas law.

First, such a reading is not required by the language of the Kansas savings statute, K.S.A. 60-518. It saves actions "commenced within due time," and it does not explicitly say "commenced within due time *under K.S.A. 60-203.*" (Emphasis added.) Thus, it does not explicitly incorporate the requirement that a suit be served within 90 days to be timely commenced. In our mobile society, the

possibility that a suit might be filed in one state, dismissed, and refiled in another is not so remote that no one has thought of it. See *Prince v. Leesona Corp., Inc.*, 720 F.2d 1166, 1169 (10th Cir. 1983) (holding that Kansas savings statute applies when first suit was filed in another state). Yet the legislature has not explicitly limited the application of the savings statute to cases in which service of process was obtained within 90 days.

Second, such a reading would be procedurally unworkable. While the first suit is pending, it may be difficult or impossible to determine in a case with multiple defendants from different states—and causes of action that may have arisen in different states—which state's law will ultimately determine when the action was commenced. In Campbell's case, the Arizona court issued an order that informed him that he must obtain service of process within 120 days of filing the suit. On the facts taken in the light most favorable to Campbell, he fully complied with that order. If a new and different rule would apply in each of the other 50 states when a suit is dismissed in one state and refiled elsewhere, uniform and predictable outcomes would be unattainable. And neither a policy reason nor a legislative directive suggests to do so.

Third, when choosing which state's law to apply in a given case, the law of the forum is usually applied on procedural issues. See *Dragon v. Vanguard Industries, Inc.*, 277 Kan. 776, 790, 89 P.3d 908 (2004); Bezek, *Conflict of Laws in Kansas: A Guide to Navigating the Dismal Swamp*, 71 J.K.B.A. 21, 30 (Sept. 2002). Thus, a person who filed a suit in Arizona would expect that Arizona law would be applied to procedural issues such as how and when to serve the suit on the defendants.

As we have already noted, federal courts apply the law. of the state in which the court is located in determining when a suit was commenced for purposes of a state statute of limitations. The leading case is *Walker v. Armco Steel Corp*, 446 U.S. 740, 752-53, 64 L. Ed. 2d 659, 100 S. Ct. 1978 (1980), in which the United States Supreme Court held that state service requirements that were "an integral part of the state statute of limitations" must be applied when a case is in federal court based solely on diversity of citizenship. The district court in our case concluded that *Walker* sup-

ported the application of Kansas law requiring service of process within 90 days for the filing of a case to prevent the running of the statute of limitations. But the lawsuit in *Walker* was filed in Oklahoma federal court and a service requirement of Oklahoma state law was applied; *Walker* did not involve the filing of a suit in one state and a later refiling in another. *Walker* certainly does not explicitly require that Kansas procedural law be applied when deciding when a suit has been properly started in Arizona. For the reasons we have set forth above, we think such a ruling would be unwise and contrary to standard choice-of-law principles.

In sum, under the law that applied to the Campbell's first suit in Arizona, it was commenced on time. No more should be required for the Kansas savings statute to apply. We must therefore reverse the district court's decision granting defendant's motion to dismiss the legal-malpractice claims based on the statute of limitations.

In addition to the claim for legal malpractice, Campbell also brought claims against the attorneys for violation of the Kansas Consumer Protection Act (KCPA). The district court dismissed the KCPA claims in part because the statute of limitations had run. But the analysis of the statute of limitations applicable to a KCPA claim differs from the application of the limitations period to a tort claim like negligence. In a negligence claim, there is no claim until the plaintiff has been damaged; thus, the time limit to bring suit does not begin to run until the damage occurs. As we will see, the situation differs for KCPA claims.

In Campbell's case, he alleged that his attorneys were negligent in representing him in a lawsuit regarding employment matters, but he wasn't damaged until that separate lawsuit was lost. Thus, the district court concluded that his time limit for bringing the malpractice claim did not begin to run until he lost that lawsuit, which took place on June 4, 2003. But a consumer is not required to provide damages to have a claim under the KCPA. See K.S.A. 50-626(b); *Ray v. Ponca/Universal Holdings, Inc.*, 22 Kan. App. 2d 47, 49-50, 913 P.2d 209 (1995). Thus, the time limit for bringing a claim under the KCPA begins when the KCPA violation occurs. There is no additional period provided to discover the claim or to

assess the damages before the limitations period begins to run. See, *e.g.*, *Four Seasons Apts. v. AAA Glass Service, Inc.*, 37 Kan. App. 2d 248, Syl. ¶¶ 2, 5, 152 P.3d 101 (2007). The attorneys quit representing Campbell more than 3 years before Campbell filed the first suit, and a 3-year statute of limitations period applies to KCPA claims. K.S.A. 60-512(2). Thus, the district court correctly ruled that the statute of limitations barred Campbell's KCPA claims.

Campbell tries to avoid this result by arguing that the attorneys should be prevented from arguing the statute of limitations because the attorneys had duties of disclosure to him and he claims that they concealed their bad acts. But the list of acts upon which Campbell bases this claim are the very acts that form the basis for his KCPA claim. To hold that the statute of limitations does not apply because of the very acts that form the claim would effectively eliminate application of the statute of limitations for such claims. There must be something more—some affirmative inducement *beyond* the underlying cause of action that lulls the plaintiff into not filing his action until the limitations period has already run. Here, there is not.

The judgment of the district court dismissing the KCPA claims is affirmed. The judgment of the district court dismissing the legal-malpractice claims is reversed, and the case is remanded for further proceedings.