TAYLOR, J.
Esteban Capo appeals the partial summary dismissal of his Amended Unfair Labor Practice charge against his labor union. We reverse, concluding that the Public Employees Relations Commission (“Commission”) erred when it determined that Capo’s hybrid unfair labor charge, based on his union’s processing of his grievance, was not timely filed under section 447.503(6)(b), Florida Statutes.
On September 23, 2010, Capo filed an unfair labor practice charge with the Commission against his union, Florida Public Employees Council 79, AFSCME, AFL-CIO (the “Union”), and his former employer, the Department of Children and Families (“DCF”).[1] In the charge, Capo alleged that DCF had unlawfully dismissed him from his position as a child protective investigator and that the Union subsequently breached its duty of fair representation in processing his grievance regarding that dismissal.
Capo asserted the following pertinent facts: (1) on June 12, 2009, he was dismissed from his position with DCF for reasons not constituting “just cause”; (2) because he held a position as president of a local chapter of the Union, the Union agreed to represent him in filing a grievance to challenge the DCF dismissal, but then failed to timely appeal his grievance to Step 3 of the grievance procedure, as required by the operative collective bargaining agreement in place between the Union and DCF; and (3) on May 3, 2010, as a result of the Union’s failure, an arbi *1118 trator denied Capo’s grievance as barred in light of its untimely filing without extenuating circumstances.
While the Union was handling the grievance procedure, Capo allegedly contacted Ed Moore, a Union representative, on several occasions “to follow-up on the grievance,” but Moore failed to do so. At some point around August 31, 2009, Moore allegedly told Capo that he would not be taking any further action with regard to the grievance. On August 31, 2009, Capo sent an e-mail to Moore, requesting to be informed of the status of his grievance, but Moore did not respond. Moore was allegedly upset with Capo because Capo had been complaining about certain Union representatives to the Union president.
The Union represented Capo throughout the arbitration process. In the unfair labor charge, however, Capo alleged that the Union’s failure to timely appeal his grievance to Step 3 was not a mere oversight, but was retaliation for his previous complaints.
On August 12, 2010, Capo was suspended from his position as the president of a local chapter of the Union.
On September 29, 2010, the Commission’s General Counsel summarily dismissed the charge on the grounds that the claims were either untimely filed or factually deficient. On October 13, 2010, Capo filed an Amended Unfair Labor Practice charge.
In an order dated October 19, 2010, the Commission’s General Counsel determined that the events alleged to have occurred after March 21, 2010 (including Capo’s suspension as president of the local union branch), were within the six-month limitations period that applied to the original unfair labor practice charge of September 23, 2010, and were factually sufficient to proceed to an evidentiary hearing. However, claims based on events occurring pri- or to March 21, 2010 — including the grievance timeliness issue — were summarily dismissed as untimely under section 447.503(6)(b), Florida Statutes, which generally provides that a charge is untimely if it is based on an alleged unfair labor practice which occurred more than six months prior to the filing of the charge.
The General Counsel concluded that the limitations period began either on August 31, 2009 (when Capo would have known of Moore’s alleged ineffective prosecution of the grievance) or on September 21, 2009 (the date when the grievance had been untimely filed at step three). Thus, the General Counsel concluded that Capo had until the end of February 2010, or at the latest until March 21, 2010, in which to file an unfair labor practice charge against the Union, but untimely filed his charge on September 23, 2010.
Capo appealed to the Commission the portion of the General Counsel’s order which summarily dismissed his claims based on allegations occurring prior to March 21, 2010. Capo argued that, because he filed unfair labor charges against both the Union and DCF, this matter was a “hybrid action” for which the statute of limitations did not begin to run until the final action of May 3, 2010, when the arbitrator dismissed his grievance on timeliness grounds.
On November 23, 2010, the Commission upheld the General Counsel’s partial dismissal of the Amended Unfair Labor Practice Charge. The Commission rejected Capo’s argument that he was justified in waiting until the arbitration process was exhausted before filing the unfair labor practice charge because he initiated a “hybrid” action against both the Union and DCF. The Commission reasoned that the adoption of the hybrid theory would effectively result in an unauthorized tolling of *1119 the six-month statute of limitations under section 447.503(6)(b) for the dismissed portion of the amended charge. The Order dated November 28, 2010, specifically stated that Capo had thirty days to appeal the order to the appropriate district court of appeal. Capo timely filed a notice of appeal directed to this order.[2]
On appeal, Capo argues primarily that he was justified in completing the arbitration procedure before resorting to filing his hybrid unfair labor practice charge. He thus maintains that, because his charge was a hybrid cause of action asserting claims against both the Union and his former employer, the six-month limitations period began to run on May 8, 2010, when the arbitrator dismissed the grievance on timeliness grounds. We agree.
Although the standard of review of agency statutory interpretation has been described as de novo, an agency is nonetheless afforded wide discretion in the interpretation of a statute in which it is given the power and duty to administer. See Sullivan v. Fla. Dep’t of Envtl. Prot., 890 So.2d 417, 420 (Fla. 1st DCA 2004). “[A] reviewing court must defer to an agency’s interpretation of an operable statute as long as that interpretation is consistent with legislative intent and is supported by substantial, competent evidence.” Pub. Emps. Relations Comm’n v. Dade County Police Benevolent Ass’n, 467 So.2d 987, 989 (Fla.1985). “If the agency’s interpretation is within the range of possible and reasonable interpretations, it is not clearly erroneous and should be affirmed.” Fla. Dep’t of Educ. v. Cooper, 858 So.2d 394, 396 (Fla. 1st DCA 2003). However, judicial adherence to the agency’s view is not demanded when it is contrary to the statute’s plain meaning. Werner v. Dep’t of Ins. & Treasurer, 689 So.2d 1211, 1214 (Fla. 1st DCA 1997) (citation and internal quotation marks omitted). Where the language is clear and unambiguous, it must be given its plain and ordinary meaning. See Mayo Clinic Jacksonville v. Dep’t of Prof'l Regulation, Bd. of Med., 625 So.2d 918, 919 (Fla. 1st DCA 1993).
State public employees relations law under Chapter 447 is to be “construed with the National Labor Relations Act as a model insofar as such construction is harmonious with the spirit and policy of Florida legislation on the subject.” United Faculty of Fla. v. Pub. Employees Emp. Relations Comm’n, 898 So.2d 96, 101 (Fla. 1st DCA 2005) (citation and internal quotation marks omitted). Section 447.503(6)(b), Florida Statutes, sets forth a six-month limitations period for bringing an unfair labor practice charge. The statute provides that “[i]f the commission determines that the alleged unfair labor practice occurred more than 6 months pri- or to the filing of the charge, the commission shall issue an order dismissing the case, unless the person filing the charge was prevented from doing so by reason of service in the Armed Forces, in which case the 6-month period shall run from the date of the person’s discharge.” § 447.503(6)(b), Fla. Stat.
The language in section 447.503(6)(b) is substantively indistinguishable from the corresponding limitations period in the Na *1120 tional Labor Relations Act. See NLRA § 10(b), 29 U.S.C. § 160(b) (“[N]o complaint shall issue based upon any unfair labor practice occurring more than six months prior to the filing of the charge with the Board and the service of a copy thereof upon the person against whom such charge is made, unless the person aggrieved thereby was prevented from filing such charge by reason of service in the armed forces, in which event the six-month period shall be computed from the day of his discharge.”).
In DelCostello v. International Brotherhood of Teamsters, 462 U.S. 151, 171, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983), the Supreme Court ruled that the six-month statute of limitations prescribed by section 10(b) of the National Labor Relations Act was the appropriate statute of limitations for “hybrid” actions — that is, cases involving both claims against the employer and claims against the Union for breach of the duty of fair representation. The Court in DelCostello did not address when the six-month period begins to run. But the Court explained that ordinarily “an employee is required to attempt to exhaust any grievance or arbitration remedies provided in the collective bargaining agreement,” and that the employee is bound by the result of those proceedings subject only to very limited judicial review. Id. at 163, 103 S.Ct. 2281. The Court recognized the need for the hybrid cause of action, however, because the strict rule of limited judicial review “works an unacceptable injustice when the union representing the employee in the grievance/arbitration procedure acts in such a discriminatory, dishonest, arbitrary, or perfunctory fashion as to breach its duty of fair representation.” Id. at 164, 103 S.Ct. 2281. Here, Capo’s hybrid action presents such a dual claim, alleging both that DCF improperly discharged him and that the Union breached its duty to represent him in failing to properly prosecute the grievance procedure.
Under federal case law, the six-month limitation period starts running when the plaintiff discovers, or should have discovered, the acts constituting the alleged violation. Howard v. Lockheed-Georgia Co., 742 F.2d 612, 614 (11th Cir.1984). Applying this principle to hybrid suits, the Eleventh Circuit has explained that “the timeliness of the suit must be measured from the date on which the employee knew or should have known of the union’s final action or the date on which the employee knew or should have known of the employer’s final action, whichever occurs later.” Proudfoot v. Seafarer’s Int’l Union, 779 F.2d 1558, 1559 (11th Cir.1986). Therefore, “a cause of action for breach of the duty of fair representation accrues at the point where the grievance procedure has been exhausted or otherwise breaks down to the employee’s disadvantage.” Hayes v. Reynolds Metals Co., 769 F.2d 1520, 1522 (11th Cir.1985). As the Hayes court explained: “It is only at this point that the employee is cognizant of any alleged breach of the duty owed him by the union.” Id.
Based on similar reasoning, the Second Circuit has held that the limitations period begins to run when the employee suffers an unfavorable outcome in an arbitration or grievance procedure where he was represented by the union. See Ghartey v. St. John’s Queens Hosp., 869 F.2d 160, 163 (2d Cir.1989) (cause of action for hybrid suit did not accrue until unfavorable arbitrator’s decision where union did in fact represent the employee at arbitration).
In this case, the Commission erroneously determined that Capo’s unfair labor charge based on the Union’s processing of his grievance was untimely filed. In hybrid actions, like this one, federal *1121 courts have uniformly interpreted the six-month limitations period in the NLRA as beginning to run when the grievance or arbitration procedure has been exhausted or otherwise broken down to the employee’s disadvantage. Here, the Union continued to represent Capo throughout the arbitration procedure. Thus, the six-month limitation period began to run when the arbitrator denied Capo’s grievance as untimely. A hybrid charge challenging the adequacy of union representation, if filed before the arbitration was complete, would have been inefficient and premature. See Childs v. Pennsylvania Fed’n Bhd. of Maint. Way Emps., 831 F.2d 429, 434-35 (3d Cir.1987).
While the Commission was concerned that accepting Capo’s theory would “effectively result in an unauthorized tolling of the six-month statute of limitations,” the Commission’s reasoning was unsound. It appears that the Commission determined that the statute of limitations is tolled only when the charging party was prevented from filing a charge by reason of service in the Armed Forces. However, the federal statutory limitations period in the NLRA includes the same language concerning Armed Forces, yet the federal courts have held that the six-month limitations period does not begin to run in a hybrid action until the employee suffers an unfavorable outcome in an arbitration or grievance procedure where he was represented by the union. More important, the issue in this case concerns when the claim accrued, not whether the statute of limitations should be tolled. The Commission overlooked well-settled federal case law interpreting the NLRA, which is the statutory model for Florida’s limitations period.
In sum, the six-month limitation period began to run on May 3, 2010, which was when the arbitrator denied Capo’s grievance as untimely. Therefore, Capo’s hybrid unfair labor charge dated September 23, 2010, was timely filed. We reverse the partial dismissal of Capo’s unfair labor practice charge and remand for further proceedings.

Reversed and Remanded for farther proceedings.

POLEN and STEVENSON, JJ., concur.

. The unfair labor charge against DCF was litigated separately from the charge against the Union; the cases were assigned separate numbers before the Commission and were the subject of separate orders. The dismissal of Capo's unfair labor practice charge against DCF is the subject of a separate appeal in Case Number 4D10-5154.

. Capo later withdrew his claim concerning his suspension from union membership on August 12, 2010. Ultimately, the Commission entered a separate order accepting the withdrawal. However, in light of the language of Capo’s notice of withdrawal and in light of the previous partial dismissal of Capo’s unfair labor practice charge, Capo's withdrawal of the unfair labor practice charge can be construed as no more than withdrawal of the charge related to his August 2010 suspension as union president, which was the only unfair labor practice charge then pending.